In re SOUTHWEST SUPERMARKETS, L.L.C.; Southwest Holdings, L.L.C., Debtors.

Daniel P. Collins, Trustee for the Bankruptcy Estate of Southwest Supermarkets, L.L.C.; Southwest Holdings, L.L.C., Plaintiffs,

v.

Kohlberg and Company, et al., Defendants.

Bankruptcy Nos. 01–14805 EDF–RJH to 01–14812–PHX–RJH. Adversary No. 03–945.

United States Bankruptcy Court, D. Arizona.

Aug. 25, 2004.

Craig D. Hansen, Squire, Sanders & Dempsey L.L.P., Curt W. Clausen, Treon, Strick, Lucia & Aguirre, Daniel E. Garrison, Edward M. Zachary, Gallagher & Kennedy, P.A., Phoenix, AZ, Eric Slocum Sparks, Eric Slocum Sparks PC, Tucson, AZ, Joseph E. Cotterman, Gallagher & Kennedy, P.A., Sean T. Cork, Squire, Sanders & Dempsey, L.L.P., Phoenix, AZ, for Debtor.

Curt W. Clausen, Treon, Strick, Lucia & Aguirre, Phoenix, AZ, Daniel P. Collins, Collins, May, Potenza, Baran & Gillespie, Phoenix, AZ, Joel B. Weinberg, Ask Financial, Tarzana, CA, Joseph L. Steinfeld, Jr., Ask Financial, Eagan, MN, Maureen P. Henry, Collins, May, Potenza, Baran & Gillespie, Phoenix, AZ, Molly T. Shields, Abrams & Steinfeld, Tarzana, CA, S. Cary Forrester, Forrester & Worth, PLLC, Phoenix, AZ, for Trustee.

James E. Cross, Osborn Maledon P.A., Phoenix, AZ, for Trustee, Chapter 11.

Paul A. Randolph, Trudy A. Nowak, Phoenix, AZ, for U.S. Trustee.

Dale C. Schian, Mark C. Hudson, Schian Walker, P.L.C., Michael E. Neumann, Hahn, Howard & Greene, L.L.P., Phoenix, AZ, for Creditor Committees.

## OPINION RE: DEFENDANTS' MOTION TO DISMISS

RANDOLPH J. HAINES, Bankruptcy Judge.

Kohlberg's Motion to Dismiss the Trustee's First Amended Complaint raises three primary issues: (1) whether a trustee can validly assert claims that were assigned to it by secured creditors; (2) if so, whether the claims are barred by an applicable statute of limitations; and (3) if

not, whether a parent company owes a fiduciary duty to its wholly owned subsidiary that is insolvent or nearly so.

The Court concludes that although the Trustee can assert the assigned claims under the present facts, the applicable statutes of limitations were not tolled as to creditors by an adverse domination theory. Consequently the only creditor claims the Trustee may assert are for constructive fraudulent transfers made less than four years prepetition, and actual fraudulent transfers made prior to that time if the Trustee can plead facts showing the creditors had no reason to know of the fraudulent transfers more than one year prepetition.

With one exception, the only debtor claims that the Trustee may assert are for breaches of fiduciary duty, but under applicable Delaware law a parent owes no fiduciary duty to a wholly owned subsidiary. The Court therefore grants Kohlberg's motion to dismiss as to the fiduciary duty counts. The Court denies the motion to dismiss counts pertaining to the tax overpayment.

## Background Facts

On July 24, 1995, Kohlberg & Co. ("Kohlberg")[1] purchased Southwest Supermarkets ("Southwest" or the "Debtor"), which became its wholly owned subsidiary. As part of the acquisition, Kohlberg and Southwest entered into a "fee agreement" where Southwest agreed to pay Kohlberg a $1 million fee for its efforts in arranging the acquisition. Southwest also agreed to pay Kohlberg a management fee each year of either $200,000 or five percent of earnings before interest, taxes, depreciation and amortization, whichever was greater, for Kohlberg's management services.

Shortly after the acquisition in 1995, Kohlberg hired Jim Pack to serve as CEO and President of Southwest. Pack purchased a 2% interest in Southwest for $200,000. When Pack resigned as CEO in May of 1997, Southwest purchased his 2% interest for $1.5 million and his vested options for $1.869 million. Also in 1997, Jerome Miller, another Southwest officer, was paid $800,000 by Southwest for his vested options.

Southwest apparently also agreed to cover certain of the Kohlberg Defendants' tax liabilities arising from their ownership of Southwest. In 1996 and 1997, Kohlberg estimated that distributions of $5,829,664 were necessary to pay the tax liabilities arising from Southwest's expected profits, and Southwest paid this amount to Kohlberg. The tax liabilities that actually accrued for those years turned out to be approximately half of the amount that had been disbursed to Kohlberg, but Southwest never requested a reimbursement of the overpayment and none was ever made.

Southwest filed this Chapter 11[2] case in November, 2001. While Southwest was still debtor in possession, this Court approved a global settlement agreement among the Debtors, the secured creditors and the Official Unsecured Creditors' Committee. In the agreement, the parties agreed that any proceeds that might be generated from the claims at issue here would be distributed only to the secured creditors.[3] Very shortly thereafter, the

---

1. The "Kohlberg Defendants" include Kohlberg & Company, L.L.C., KSSI G.P., Inc., KSSI G.P. II, Inc., KSSI Management, L.P., KSSI Acquisition Company, L.P., and KSSI Acquisition Company II, L.P.

2. Unless otherwise indicated, all chapter and section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1330.

3. The settlement agreement defined the "Kohlberg claims" that were assigned to the secured creditors as "any and all causes of

Court granted the Debtors' motion for appointment of a Chapter 11 Trustee, and Daniel Collins was subsequently appointed Trustee on May 30, 2002. On or about September, 2003, the secured creditors assigned to the Trustee all the claims that had been assigned to them under the global settlement agreement.

The Trustee filed the complaint initiating this adversary proceeding on November 4, 2003, just prior to expiration of the Code's two-year statutes of limitations,[4] and subsequently filed his First Amended Complaint (the "Complaint"). The Trustee's Complaint alleges that the excessive fees Kohlberg charged, the Pack and Miller buyouts, and the tax overpayment combined with Southwest's other debt led Southwest to insolvency or the brink of insolvency. The Complaint sets forth thirteen claims primarily based on these actions by Kohlberg.[5]

Kohlberg moved to dismiss. Kohlberg argues that all but one of the Trustee's claims are time-barred and that the "adverse domination" doctrine does not apply to toll the applicable statute of limitations.

Kohlberg also argues that the Trustee lacks standing to bring this action because the proceeds would only benefit secured creditors. In addition, Kohlberg argues that many of the claims fail to state a claim for which relief can be granted based on the proposition that parent companies do not owe a fiduciary duty to their wholly owned subsidiaries. And finally, Kohlberg argues that the claims fail because the Trustee has not alleged grounds to pierce the corporate veil of Southwest to reach shareholders and other upstream defendants.

## Analysis

*Williams* **does not bar the Trustee's pursuit of assigned claims for the benefit of the entire estate when there is no potential for conflict with unassigned claims.**

■ Because the Trustee acquired all of these claims by assignment from the secured creditors, the first threshold question is whether *Williams*[6] precludes the Trustee from asserting them. *Williams* applied the Supreme Court's reasoning in *Caplin*,[7] a case under the Bankruptcy Act[8]

---

action that may exist against Kohlberg & Company or any of its subsidiaries or affiliates for payments and/or distributions made by the Debtors prior to the Petition Date." This definition would include both debtor causes of action and trustee causes of action, *e.g.*, avoidance actions.

4. Bankruptcy Code § 108(a) provides that if a statute of limitations on a debtor cause of action has not expired as of the filing of the bankruptcy case, the trustee may assert such a cause of action within the later of its ordinary limitations or two years after the filing of the bankruptcy case. Because this case was filed on November 11, 2001, that extended time would have expired on November 11, 2003. The statute of limitations on trustee causes of action is also two years after the filing of the case, pursuant to Code § 546(a)(1).

5. The thirteen claims are: (1) Breach of Fiduciary Duty, (2) Unjust Enrichment; Tax Lia-

bility Advance, (3) Breach of Contract; Tax Liability Advance, (4) Fraudulent Conveyance; Pack and Miller Buy Outs, (5) Unjust Enrichment; Pack and Miller Buy Outs, (6) Breach of Fiduciary Duty; Pack Buy Out, (7) Breach of Fiduciary Duty, (8) Breach of Fiduciary Duty; Inappropriate Transfer of Funds, (9) Constructive Fraud, (10) Gross Negligence and Mismanagement, (11) Breach of Covenant of Good Faith and Fair Dealing, (12) Fraudulent Transfer, (13) Assisting in the Breach of Fiduciary Duty.

6. *Williams v. Cal. 1st Bank*, 859 F.2d 664 (9th Cir.1988).

7. *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972).

holding that bankruptcy trustees cannot assert bondholders' claims against their indenture trustee. Although *Caplin* did not deal with assigned claims, *Williams* found in that opinion three reasons why trustees should not be allowed to pursue assigned claims: (1) because there would be no net benefit to the estate, but only to the assignors; (2) because the trustee did not have the ability to assert the claims absent the assignment; and (3) because not all of the claim holders had assigned their claims to the trustee, creating the possibility of conflicting results or liabilities between the trustee and those creditors who retained their claims and might assert them.[9] The Ninth Circuit opinion did not explain why point number two is a reason to preclude a trustee from pursuing the claim assigned to him, simply because, absent the assignment, he would not have the claim. Consequently the *Williams* opinion really sets forth only two cogent reasons for its result.[10]

None of these concerns applies under the present facts. Here, the Trustee is free to pursue the claims for the benefit of the entire estate. The facts here are not like those in *Williams,* where the assignors made their assignments only on the condition that the net benefits would be turned over to the assignors.[11] Here, the claims are expressly assigned to the Trustee for the benefit of the estate.[12] It is entirely possible, as the Kohlberg defendants argue, that because of their priority claims the secured creditors will nevertheless reap the major benefit from these claims, but that is not a matter that can be decided on this motion to dismiss and, even if that were the case, it nevertheless distinguishes *Williams* from the present facts. The Trustee will here be pursuing claims that belong to the estate, rather than claims that have been assigned only for purposes of collection. There will be no special priority distribution of the proceeds based on who assigned the claims

**8.** The Bankruptcy Act of 1898 (*repealed and replaced in* 1978 by the Bankruptcy Code, 11 U.S.C. §§ 101–1330).

**9.** *Williams,* 859 F.2d at 666–67.

**10.** There is also extremely limited cogency to point number three. The potential for conflict between the trustee's pursuit of the assigned claims and the pursuit of the unassigned claims by the creditors who retained them is no greater than, and is probably less than, the potential for such conflict that existed among all of the creditors prior to the assignment. If such potential for conflict would not preclude one creditor from pursuing its own claim, it is difficult to see why it should preclude the trustee from pursuing such a claim when it is assigned to him. This reasoning, however, does not arise from *Williams* itself but rather is found in *Caplin,* so perhaps the Ninth Circuit felt itself bound by that rationale even if it made little sense.

**11.** The assignment in *Williams* provided that after "approved fees and expenses and other

priority claims" were paid from the proceeds, the trustee would seek "to disburse the balance of the funds to the investors providing the Assignment according to the size of their respective investments. Further, I will request that the investors who did not assign their claims *not* participate in this separate distribution." 859 F.2d at 665 (emphasis in original). This led the *Williams* court to conclude that, in reality, "the creditors have assigned their claims only for purposes of bringing suit. As a result, the Trustee, as in *Caplin,* is attempting to 'collect money not owed to the estate.'" *Id.* at 666–67.

**12.** An unsigned copy of the assignment was attached to the Kohlberg defendants' reply memorandum. It provides that "Pursuant to this Assignment, the Trustee shall have standing to pursue any or all of the Kohlberg Claims on behalf of the Estates," and that "All proceeds of the Kohlberg Claims shall be property of the Estates and shall be available for distribution to all allowed creditors of the Estates in accordance with the priorities set forth in the Bankruptcy Code."

and the amount of the claims assigned, as in *Williams*.

Nor is point number three involved here, because here all of the holders of the claims assigned them to the Trustee. The claims that were assigned were those previously held by the Trustee. There is no other holder of a claim of that type that was not re-assigned to the Trustee. Consequently there are no potentially conflicting claims still held by other creditors.

Neither *Caplin* nor *Williams* relied on anything in the Bankruptcy Act or the Code that would preclude a trustee from pursuing an assigned claim for the benefit of the estate nor did either case identify any policy reasons why a trustee should be so precluded, other than those discussed above. Because those concerns do not apply on these facts, there is no reason why either *Caplin* or *Williams* would preclude the Trustee of pursuing these claims for the benefit of the estate.

**The assignment was sufficiently effective to preclude a motion to dismiss.**

■ The second threshold issue is whether the assignment was effective and, if so, whether it took effect prior to expiration of the two-year statutes of limitations. The Trustee may not have received a fully executed assignment document prior to filing of this lawsuit and the expiration of the statutes of limitations. Although there was a prior oral agreement to make the assignment, Kohlberg argues that the assignment was a modification of the Settlement Agreement, which could be accomplished only in writing.

The assignment does not appear to this Court to be a modification of the Settlement Agreement, but rather simply a transaction in which the secured creditors dealt with their own assets that they obtained on account of the Settlement Agree-ment, as they were free to do under the Agreement. Nothing in the Settlement Agreement prohibited such an assignment or limited the secured creditors' ability to deal with these assets as they wished. Consequently, there is no modification of the Settlement Agreement. Kohlberg has not made any other argument why the oral assignment apparently made prior to the filing of this lawsuit was ineffective simply because it was not in writing. And for purposes of a motion to dismiss, the Court must accept as true the allegation of the Complaint that the Trustee has standing to bring these claims "by assignment."

■ Kohlberg certainly is correct that a trustee taking such an assignment is not an ordinary course of business transaction, and generally trustees may not engage in out of the ordinary course of business transactions without court approval. Note, for example, that court approval was sought and obtained for the claims assignment in *Williams*.[13] The prohibition on trustees acting outside the ordinary course of business without court approval is generally limited to the use, sale or lease of property of the estate, per Code § 363(b). The mere taking of an assignment of an asset owned by a secured creditor would not necessarily implicate property of the estate, unless the trustee paid for the assignment or the assignment agreement obligated or practically required the trustee to expend estate funds to liquidate the assigned asset. It is possible that the assignment here had such effects, and creditors of the estate should be given an opportunity to object to such an out of the ordinary course of business transaction. Consequently if the Trustee does intend to pursue the assigned claims, this Court will require the Trustee to file a motion to obtain Court approval of the assignment

---

13. *Williams*, 859 F.2d at 665.

on notice to all creditors and parties in interest.

Unless such Court approval is ultimately denied, however, this does not necessarily mean that the assignment and the filing of the lawsuit by the Trustee are barred by the statute of limitations. The purpose of the statute of limitations is to ensure that claims are brought timely before they become stale and evidence is lost. That purpose was sufficiently served by the actual filing of the lawsuit even if the assignment was not then presently effective, provided only that it ultimately becomes effective. **A contractual choice of law does not govern the statute of limitations for claims assertable by nonparties to the contract.**

The next threshold issue is whose law governs the applicable statute of limitations. The Trustee argues that the Fee Agreement governing the allegedly excessive management fees, and the Credit Agreement that authorized the tax advances, both expressly chose New York as the governing law, so New York statutes

of limitations should apply to the Trustee's causes of action. By this argument, the Trustee seeks to avail himself of various New York statutes of limitations that are six years, where the corresponding Arizona limitations would be four years or less.[14]

In deciding whose law supplies a statute of limitations Arizona courts generally follow the RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 142 (rev.1988), which provides that "unless the exceptional circumstances of the case make such a result unreasonable: (1) the forum will apply its own statute of limitations barring the claim."[15] The Trustee generally agrees with this proposition and does not urge exceptional circumstances, but argues that a choice of law provision in a contract can also effectively choose the statute of limitations. Another judge of this Bankruptcy Court rejected just that argument in a reported decision,[16] but that decision was overruled by the District Court in an unreported decision.[17]

**14.** For example, the Trustee argues that the New York limitations for unjust enrichment, fraudulent conveyance and constructive fraud are six years, whereas the Kohlberg defendants argue the Arizona limitations are three years for unjust enrichment (A.R.S. § 12–543) and constructive fraud (A.R.S. § 12–543) and four years for fraudulent transfer (A.R.S. § 44–1009).

**15.** *Smith v. Arthur Andersen L.L.P.*, 175 F.Supp.2d 1180, 1196 (D.Ariz.2001).

**16.** *Western Group Nurseries, Inc. v. Estate of Adams (In re Western United Nurseries, Inc.)*, 191 B.R. 820, 824 (Bankr.D.Ariz.1996).

**17.** *Western Group Nurseries, Inc. v. Estate of Adams (In re Western United Nurseries, Inc.)*, No. MC 96–0081–PHX–SMM (D.Ariz. July 3, 2000). At oral argument counsel expressed concern about citing to this unreported decision in light of Ninth Circuit Rule 36–3(b) prohibiting the citation to unreported decisions. That rule, however, applies only to

the citation of "unpublished dispositions or orders of this Court," meaning the Ninth Circuit. To this Court's knowledge, there is no similar rule adopted by either the District Court or the Bankruptcy Court for the District of Arizona, so there does not appear to be any prohibition against citing their unpublished decisions, at least to those courts. Arizona's Committee on the Rules of Professional Conduct reached a similar conclusion with respect to the citation to the Superior Court of unpublished Superior Court decisions notwithstanding rules of the Arizona Supreme Court and Court of Appeals prohibiting the citation of memoranda decisions. Formal Ethics Opinion No. 87–14. The Arizona Supreme Court and the Arizona Court of Appeals subsequently held that their rules prohibit the citation to those courts of memoranda decisions of *any* other court. *Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377 n. 3, 701 P.2d 1182, 1185 n. 3. (1985); *Walden Books Co. v. Ariz. Dept. of Revenue*, 198 Ariz. 584, 12 P.3d 809, ¶¶ 19–23 (App.Div. 1

■ The District Court's decision in *Western Group Nurseries* held that under the revised version of Restatement § 142, the parties could choose the applicable state's statute of limitations under Restatement § 187. While under the old view that limitations are procedural and governed by the law of the forum it was held that a general choice of law would not control the choice of limitations,[18] the District Court concluded that under the revised version of Restatement § 142 both Arizona and the Ninth Circuit would permit a parties' choice of law to govern limitations: "Arizona's conflict-of-law principles no longer treat limitations periods as procedural matters to be determined by the law of the forum. Instead, section 187 of the Restatement requires that valid, general choice-of-law clause be deemed to include the statutes of limitations of the chosen state."[19]

■ However, to the extent the Trustee is asserting creditors' claims, those creditors were not parties to the agreements that contained the choice of law provisions. And the primary creditors whose rights the Trustee would assert are unsecured creditors rather than the secured creditors who assigned their claims to the Trustee. For example, Code § 544(a)(2) hypothesizes an unsecured creditor, and § 544(a)(1) hypothesizes a creditor on a "simple contract" who obtains a judicial lien upon commencement of the case, meaning a creditor under a contract for which the law provides no special priority or claim to particular assets.[20] Because the Debtor here "owned and operated retail grocery stores in and around Phoenix, Arizona; Tucson, Arizona; and El Paso, Texas,"[21] those creditors would be primarily local trade vendors.

The Court therefore concludes that because the unsecured creditors were not parties to the contracts containing the choice of law provisions and because Arizona has a more significant relationship to the unsecured creditors than does New York, the general rule of revised Restatement § 142 should apply to all of the creditor claims the Trustee might assert. Consequently the law of the forum, Arizona, will provide the statute of limitations for the creditor claims.

All of the potentially applicable Arizona statutes of limitations are four years or less; the only longer Arizona statute is for actions on written contract, which is six years. This case was filed in November, 2001. This means that, absent some tolling principle such as a discovery rule or adverse domination, any cause of action arising prior to November, 1997, would be barred by a four year statute. The Pack

---

2000). Again, however, those conclusions appear to be based solely on the rules of those courts, and in the absence of any similar rule in the District Court or the Bankruptcy Court there appears to be no basis to extend those conclusions to apply to the citation of an unpublished District or Bankruptcy Court decision either to the District Court or to the Bankruptcy Court. Moreover, although the exceptions in Ninth Circuit Rule 36–3 do not appear to reach this situation, it must be appropriate to cite an unpublished decision for the purpose of demonstrating that a published decision of a lower court had been overruled.

**18.** *E.g., Des Brisay v. Goldfield Corp.,* 637 F.2d 680, 682 (9th Cir.1981).

**19.** *Western Group Nurseries,* No. MC 96–0081–PHX–SMM at 13–14, citing *DeLoach v. Alfred,* 191 Ariz. 82, 952 P.2d 320, 322 n. 2 (App.1998), *rev'd on other grounds,* 192 Ariz. 28, 960 P.2d 628, 629–31 (1998) and *Wang Labs., Inc. v. Kagan,* 990 F.2d 1126, 1128–29 (9th Cir.1993).

**20.** *North v. Desert Hills Bank (In re North),* 310 B.R. 152, 156 n. 4 (Bankr.D.Ariz.2004).

**21.** First Amended Complaint ¶ 2.

and Miller buyouts and the tax advance payments were made prior to mid-year, 1997. The Trustee does not allege a breach of a agreement to make tax advances (which would be governed by a six year statute), and his allegation in Count 3 of a breach of an agreement to repay the overadvances appears to be of an oral or implied agreement (which would be governed by a three year statute). The management fee agreement was made in 1995 and there is no allegation that it was breached; to the contrary, the Trustee's complaint is that it was complied with. Consequently causes of action pertaining to these transactions would be barred, absent some tolling principle.

**Adverse domination and the discovery rule do not apply to creditor claims.**

■ The Trustee relies principally on an adverse domination argument to extend the statutes of limitation because he alleges that the Kohlberg defendants dominated the debtor.[22] But this theory would not appear to apply to any creditor causes of action that the Trustee attempts to assert, because there is no allegation that the creditors were dominated by Kohlberg.[23]

■ Nor does the Complaint allege any facts that would justify application of a discovery rule to extend the statutes of limitations as to creditor causes of action. This is particularly true as to the secured creditors who assigned their claims to the Trustee. They were entitled to and presumably did closely monitor their debtor. They certainly had the ability under their loan documents to obtain all the information they needed to determine if the debtor was wasting assets or otherwise violating any duties owed to creditors. It is highly questionable whether a creditor as to whom a statute has run could obtain the same claim by assignment from someone who could claim the benefit of a discovery rule to extend the time. The Trustee has cited no such authority, and the holding of *Hecht*[24] is to the contrary, albeit only in the analogous context of adverse domination.

All of the Trustee's causes of action that purport to assert creditor claims arising from breaches of fiduciary duty are therefore barred by the statute of limitations and will be dismissed.[25] The Trustee is,

---

22. Paragraphs 46 and 47 of the First Amended Complaint allege that because of the domination by the Kohlberg defendants, *"Southwest Supermarkets* was unable to file suit on these claims at an earlier time" (emphasis added). There is no similar allegation that the creditors, or specifically the assignor secured creditors, could not have brought any claims they might have had due to Kohlberg's domination of Southwest.

23. *See Resolution Trust Corp. v. Greer*, 911 P.2d 257, 264 (Okla.1995).

24. *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 635 A.2d 394 (App.1994).

25. This of course does not imply that the Trustee had standing to assert such claims if they were not barred by the statute of limitations. Except for avoidance actions, the Ninth Circuit has not adopted the theory suggested by some cases from other circuits that § 544(a) grants trustees standing to assert any creditor claims that could be asserted by all creditors, or that could be asserted by the creditor hypothesized by § 544(a). *See, e.g., Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir.1987); *St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir.1989). While these cases do not expressly make the distinction, they may rest on the fact that while § 544(b) only grants the trustee the power to "avoid any transfer" that is avoidable by an actual creditor, § 544(a) grants the trustee that avoidance action assertable by the hypothetical creditor and, in addition, grants the trustee all the "rights and powers" of such hypothetical creditor. The Trustee's argument that the Ninth Circuit recognizes such powers rests only on *Hayes v. Palm Seedlings Partners–A (In re Agric. Research and Tech. Group, Inc.)*, 916 F.2d 528 (9th Cir.1990). That case was

however, granted 30 days' leave to amend the complaint to attempt to plead sufficient facts to justify application of a discovery rule as to the secured creditor assignor of such fiduciary duty claims.[26]

### There are no Debtor claims for breach of fiduciary duty.

Considered only as debtor claims, the Complaint cannot assert a claim upon which relief may be granted for breach of contract, unjust enrichment, constructive fraud or any other basis to challenge the allegedly excessive management fee contract of 1995 or the Pack and Miller buyouts of 1997. The Debtor itself was a party to those contracts and therefore cannot be heard to challenge them, absent some claim such as fraudulent inducement, which has not been made.

The only kind of debtor claims that the Debtor could assert on account of the management fee contract or the Pack and Miller buyouts is that by these transactions the Kohlberg defendants breached fiduciary duties owed to the debtor, or aided and abetted breaches of fiduciary duty by the Debtor's officer and directors. In order to make such a claim, however, the Debtor must establish that Kohlberg or Debtor's officers and directors actually owed a fiduciary duty to the Debtor in this regard, rather than only owing fiduciary duties to the sole shareholder of the Debtor, Kohlberg.

Because the Debtor is a Delaware corporation, Delaware law controls these issue concerning internal corporate governance. Delaware law appears to hold that when a subsidiary is wholly owned, its officers and directors owe their fiduciary duties solely to the single shareholder, and not to the subsidiary corporation itself.[27] The Trustee's only argument to the contrary is that RSL[28] makes an exception to the Anadarko rule when the subsidiary is insolvent or approaching insolvency. In fact, however, the opinion in RSL does not change the Anadarko rule as to whom the fiduciary duties are owed.

RSL's discussion of Anadarko appears only in the context of creditor claims, not debtor claims. In that context, the defendants argued that the debtor and its officers and directors were protected by the ordinary business judgment rule as to whether to continue in business or to liquidate the debtor due to its insolvency. The holding of RSL is that the ordinary business judgment rule no longer applies when the corporation is insolvent. The court so held because upon insolvency, the officers' and directors' fiduciary duties change and must satisfy a higher standard. The opinion suggests that the reason for this higher standard is because now the fiduciary

---

an avoidance action, however, so it does not establish that § 544(a) gives trustees creditor causes of action beyond avoidance actions. A bankruptcy court within the Ninth Circuit has adopted the *Koch/St. Paul* analysis and provided additional support for it by demonstrating that the legislative intent behind the Act's adoption of the predecessor to § 544(a)(2) was to enable trustees to assert creditors' rights to seek equitable relief, such as a creditor's bill. *Henderson v. Buchanan (In re Western World Funding, Inc.)*, 52 B.R. 743, 773 n. 9 & 775 n. 12 (Bankr.D.Nev.1985), citing 4B COLLIER ON BANKRUPTCY ¶ 70.64, at 730–31 (14th ed.). The reported case law has not fully elucidated what those additional rights and powers of the hypothetical creditor might be, if any, beyond the avoidance powers.

**26.** *See O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1157 (9th Cir.2002); *Prescott v. United States*, 523 F.Supp. 918 (D.Nev.1981).

**27.** *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171,1174 (Del.1988).

**28.** *Official Comm. Of Unsecured Creditors of RSL COM PRIMECALL, Inc. v. Beckoff (In re RSL COM PRIMECALL, Inc.)*, 2003 WL 22989669, *13 (Bankr.S.D.N.Y.2003).

duties become owed to creditors. While that may be the case, and while those creditors might therefore be able to assert breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, here such creditor claims are barred by the statute of limitations. *RSL* suggests that while the beneficiary of officers' and directors' fiduciary duties shifts from the corporation to creditors upon insolvency, it does not suggest that greater fiduciary duties become owed to the corporation itself, nor that any such duties would be owed upon insolvency even though not owed while solvent, as in the case of a Delaware wholly owned subsidiary.

Consequently because *Anadarko* appears to be Delaware law as to the fiduciary duty owed to the corporation, and there is nothing to suggest this law changes when the corporation becomes insolvent, the Trustee cannot state a claim for relief based upon breach of fiduciary duty owed to the Debtor corporation, or a claim for aiding and abetting such a breach of fiduciary duty. Therefore all of the Trustee's causes of action based upon such breaches of fiduciary duty must be dismissed for failure to state a claim upon which relief can be granted. This applies to both creditor claims and debtor claims: the former are barred by the statute of limitations and the latter simply do not exist.

## Some fraudulent transfer claims survive.

██ Arizona's Fraudulent Transfer Act, like the Uniform Act, provides a four year statute of limitations for constructive fraudulent transfers, dating from the date of the transfer.[29] There is no discovery rule applicable to such constructive fraudulent transfers, as there is for an actual fraudulent transfer.

As noted above, the $1 million acquisition fee, the Pack and Miller buyouts and the tax overpayment were both concluded prior to November, 1997. Constructive fraudulent transfer claims as to such transactions are therefore barred by the four year statute of limitations.

Most of the excessive management fees were also paid prior to November, 1997. Avoidance of such payments under a theory of constructive fraudulent transfer is barred by the four year statute. The statute of limitations does not, however, bar recovery of any such excessive management fees paid after November, 1997.[30]

---

29. A.R.S. § 44–1009 provides:

A claim for relief with respect to a fraudulent transfer or obligation under this article is extinguished unless an action is brought:
  1. Under section 44–1004, subsection A, paragraph 1 [with actual fraudulent intent] within four years after the transfer was made or the obligation was incurred or, if later, within one year after the fraudulent nature of the transfer or obligation was or through the exercise of reasonable diligence could have been discovered by the claimant.
  2. Under section 44–1004, subsection A, paragraph 2 or section 44–1005 [a constructive fraudulent transfer], within four years after the transfer was made or the obligation was incurred.

Although these terms do not appear in the statute, the Court uses the customary terms of art under which a "constructive" fraudulent transfer is one that is avoidable because made while insolvent for less than reasonably equivalent value, regardless of intent, whereas an "actual" fraudulent transfer is one made with actual intent to hinder, delay or defraud creditors.

30. Although the motion to dismiss such claims for post-November, 1997 payments is denied on limitations grounds, this does not necessarily mean that the Complaint adequately pleads a claim for recovery of such payments. It could be argued that such payments were made on account of the 1995 management contract and that satisfaction of such antecedent debt constitutes fair equivalent value. That issue was not briefed on this motion to dismiss and therefore is not being decided; the Court merely determines that the statute of limitations does not bar such

■ Arizona's fraudulent transfer statute, like the uniform act, expressly provides a discovery rule for actual fraudulent conveyance claims, requiring that if they are brought later than four years after the transaction, they must be brought within one year of when the creditor knew or, with reasonable diligence, should have known of the existence of the cause of action. As to the pre–1997 excessive management fees, the Pack and Miller buyouts and the tax overpayment, the Complaint does not allege with any particularity when the secured creditors knew or should have known that these transfers, of which secured creditors were undoubtedly aware, were made with actual fraudulent intent. Therefore the Trustee will be granted 30 days' leave to amend the Complaint to plead facts showing why the secured creditors did not know or, with reasonable diligence did not have reason to know, of the existence of these causes of action until after November 2000.

## The claim for the tax overpayment may not be barred.

■ The Trustee has pled counts for breach of contract and unjust enrichment with respect to the approximate $3 million tax overpayment that occurred in 1996 or 1997. This was apparently booked and regarded by the Debtor corporation as a receivable due it from the parent, but there is nothing in the Complaint to indicate when it was due to be paid nor that any demand for repayment had ever been made. There is therefore no basis on the face of the Complaint itself to determine

when it became due or when a cause of action for it accrued, or when any applicable statute of limitations began to run.

A motion to dismiss must rest solely on the complaint as pled.[31] Of course the Court may consider matters outside the complaint, treat the motion to dismiss as a motion for summary judgment and give the parties an opportunity to present all pertinent material.[32] This Court declines to do so, but notes that what has been submitted outside the Complaint does not aid Kohlberg's motion because it implies that the Debtor regarded the recovery of the tax overpayment as a viable, potentially recoverable receivable as of one month prior to the filing of the bankruptcy case.[33]

Moreover, this is a debtor cause of action. The advance for tax obligations was apparently agreed to in a Credit Agreement with the secured creditors, which expressly chose New York law. Consequently New York's six year statute of limitations for unjust enrichment should apply to the Debtor's claim to recover the tax overadvance.

Because the Complaint contains nothing to indicate that the claim is barred by a statute of limitations, the motion to dismiss the counts pertaining to the tax overpayment is denied.

## Piercing the corporate veil and deepening insolvency do not state claims for relief.

The Trustee's response to the motion to dismiss also addresses piercing the corporate veil and deepening insolvency theories. It is not clear, however, to which

---

constructive fraudulent transfer claims as to management fees paid after November 1997.

**31.** *AlliedSignal, Inc. v. City of Phoenix,* 182 F.3d 692, 695 (9th Cir.1999).

**32.** Fed.R.Civ.P. Rule 12(b), incorporated by Bankruptcy Rule 7012(b).

**33.** An October 18, 2001, intracompany email states: "All is quiet (at least within my privy) regarding the $2.9 million Company receivable from Kohlberg."

578

counts these theories might apply or whether they apply to debtor claims or creditor claims asserted by the Trustee.

 Piercing the corporate veil is not itself a cause of action but rather merely a theory on which someone other than the debtor can be liable on a creditor's claim. It is, therefore, inherently a creditor's remedy. And it is a remedy that permits a creditor to recover from a debtor's parent for the credit the creditor extended to the debtor. The Complaint contains no count for piercing the corporate veil, nor any count seeking recovery from the Kohlberg defendants of the credits that the creditors extended to the Debtor.

Similarly, there is no count of the Complaint denominated a count for deepening insolvency. Deepening insolvency is mentioned in Count Seven, for breach of fiduciary duty, and in Count Ten, for gross negligence and mismanagement. It therefore appears to be asserted as part of the damages sought in those counts, rather than as a separate tort. The Court has already determined, however, that those two counts must be dismissed because limitations has expired if these are conceived of as creditor claims, and there are no such debtor claims because under *Anadarko* no such fiduciary duties were owed to the Debtor itself.

If the Trustee intends to assert deepening insolvency as its own cause of action, he shall have 30 days in which to amend the Complaint to assert it, identifying on whose behalf the Trustee asserts the claim and what particular facts give rise to the cause of action.

**Conclusion**

For the foregoing reasons, the Defendants' motion to dismiss is granted in part, some with leave to amend within 30 days, and denied in part.

To summarize the: Kohlberg's motion to dismiss is granted in its entirety, without leave to amend, as to Count 1 (breach of fiduciary duty), Count 5 (unjust enrichment re: Pack and Miller buyouts), Count 6 (breach of fiduciary duty re: Pack buyout), Count 7 (breach of fiduciary duty re: deepening insolvency), Count 8 (breach of fiduciary duty), Count 9 (constructive fraud), Count 10 (gross negligence and mismanagement), Count 11 (breach of covenant of good faith and fair dealing), and Count 13 (assisting in breach of fiduciary duty).

Kohlberg's motion to dismiss is denied with respect to Counts 2 and 3 (unjust enrichment and breach of contract re tax overpayments).

Kohlberg's motion to dismiss is granted as to Count 4 (fraudulent conveyance re: Pack and Miller Buyouts), with leave to amend to plead when creditors should have known of the actual fraudulent transfer.

Kohlberg's motion to dismiss Count 12 is granted with respect to constructive fraudulent transfers made prior to November, 1997; is denied with respect to constructive fraudulent transfers made after November, 1997 (such as excessive management fees paid after that date); and is granted with respect to actual fraudulent transfers, with 30 days leave to amend to plead when creditors should have known of such actual fraudulent transfers.