**In re SCOTT ACQUISITION CORP., et al., Debtors.**

Montague S. Claybrook, as Chapter 7 Trustee for Debtors Scott Acquisition Corp. and its subsidiary Scotty's, Inc., Plaintiff,

v.

Thomas E. Morris, an individual, David Bost, an individual, Robert Pacos, an individual, Paul Dulfer, an individual, David James, an individual, Joe Patten, an individual, Douglas N. Bowne, an individual, and John Kelly, an individual, Defendants.

Bankruptcy No. 04–12594(PJW).
Adversary No. 05–30112(PJW).

United States Bankruptcy Court, D. Delaware.

June 23, 2006.

Laura Davis Jones, Bruce Grohsgal, Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., Wilmington, DE, Jeremy V. Richards, James K.T. Hunter, Jonathan J. Kim, Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C., Los Angeles, CA, for Defendants.

Christopher P. Simon, Erica N. Finnegan, Cross & Simon, LLC, Wilmington, DE, Craig P. Rieders, Brett M. Amron, Genovese Joblove & Battista, PA, Miami, FL, for Plaintiff.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the defendants' Thomas E. Morris, David Bost, Robert Pacos, Paul Dulfer, David James, Joe Patten, Douglas N. Bowne, and John Kelly's motion (Adv.Doc. # 17) to dismiss the Chapter 7 trustee's complaint against them. For the reasons discussed below, the Court will deny the motion.

## BACKGROUND

Scotty's, Inc. is the wholly-owned subsidiary of Scott Acquisition Corp. (Adv. Doc. # 1, ¶ 4). Prior to their bankruptcy, Scotty's, Inc. and Scott Acquisition Corp. (collectively, the "Debtors") were retailers of building materials and home improvement products for the "do it yourself" home improvement market (Adv.Doc. # 1, ¶ 18). The defendants, Morris, Bost, Pacos, Dulfer, James, Patten, Bowne, and Kelly, were the individual officers and directors of Scotty's, Inc. ("Scotty's") (Adv. Doc. # 1, ¶¶ 8–15).

The complaint alleges the defendants' misconduct as follows. In 1998, Scotty's entered into a Loan and Security Agreement with Congress Financial Corporation (Florida) ("Congress") (Adv.Doc. # 1, ¶ 23). Under that agreement, Congress loaned Scotty's certain sums of money and took a security interest in substantially all of the Debtors' property (Adv.Doc. # 1, ¶ 23). Scotty's, however, was unable to make the required loan payments (Adv. Doc. # 1, ¶ 27). As a result, Scotty's and Congress made various amendments to the loan agreement (Adv.Doc. # 1, ¶ 27).

During negotiations relating to the loan, Congress expressed its desire to have Scotty's divest itself of its real estate holdings and pay down the amounts owed to Congress (Adv.Doc. # 1, ¶ 26). This would

not only reduce the amount owed to Congress but would also allow inventory to be the sole focus of Congress' security interest (Adv.Doc. # 1, ¶ 26). Having inventory as the only collateral would allow Congress with a quick exit strategy—payment on a potential Scotty's liquidation (Adv.Doc. # 1, ¶ 26).

As such, Scotty's began divesting itself of its real estate holdings on a sale-and-leaseback basis (Adv.Doc. # 1, ¶ 28). Some properties were sold to independent third parties (Adv.Doc. # 1, ¶ 28). Others, however, were sold to entities controlled by certain of the defendants (Adv.Doc. # 1, ¶ 28). These insider defendants, through the controlled entities, paid less than fair market value for Scotty's choice real estate (Adv.Doc. # 1, ¶¶ 28–29). In return, Scotty's received no more favorable treatment on the terms of the leases than it would have with third parties (Adv.Doc. # 1, ¶ 69(c)).

Throughout, Scotty's failed to solicit and consider third party offers for the purchase of its choice real estate (Adv.Doc. # 1, ¶ 69(b)). Further, Scotty's failed to seek any independent consideration or review of these insider sale-and-leaseback transactions (Adv.Doc. # 1, ¶ 69(d)). Accordingly, the complaint alleges that the defendants, the officers and directors of Scotty's, breached their fiduciary duties of care and loyalty in several respects (Adv. Doc. # 1, ¶ 69). The complaint also alleges that the defendants had knowledge and rendered substantial assistance with regard to one another's breaches of fiduciary duties (Adv.Doc. # 1, ¶ 77).

Further, the complaint states that the defendants caused Scotty's to enter into certain loan agreements with the insider defendants, whereby the insider defendants loaned several million dollars to Scotty's at an interest rate of 11% or greater (Adv.Doc. # 1, ¶ 53). Scotty's paid back these loans in full, with interest (Adv. Doc. # 1, ¶ 69(e)). According to the complaint, such loans were unnecessary from the outset and were entered into at a time when the Debtors were insolvent (Adv. Doc. # 1, ¶ 69(e)).

On September 10, 2004, the Debtors filed voluntary petitions for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") (Adv.Doc. # 1, ¶ 3). After the petition date, the defendants reduced the limit of liability on the directors and officers liability insurance to $2,000,000 from its previous limit of $5,000,000 (Adv.Doc. # 1, ¶ 64). On June 23, 2005, this Court entered an order converting the Chapter 11 cases to Chapter 7 cases (Adv.Doc. # 1, ¶ 6). On June 28, 2005, Montague S. Claybrook was appointed the Chapter 7 trustee (the "Trustee") (Adv.Doc. # 1, ¶ 7).

The Trustee commenced this action on November 2, 2005 (Adv.Doc. # 1), alleging that the defendants breached their fiduciary duties, aided and abetted breaches of fiduciary duties, and breached their employment contracts with respect to the insider sale-and-leaseback transactions, the insider financing, and the reduction of Scotty's directors and officers insurance. The defendants now move to dismiss the complaint asserting that the Trustee has failed to state a claim upon which relief can be granted and that the Trustee lacks standing.

## DISCUSSION

A motion to dismiss for failure to state a claim upon which relief can be granted serves to test the sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). When deciding such a motion, a court accepts as true all allegations in the complaint and draws all reasonable inferences from it which the court considers in a light most favorable to the

plaintiff. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). A court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.2000) (quotations and citation omitted).

The complaint contains three counts: Count I alleges that the defendants breached their fiduciary duties, Count II alleges that the defendants aided and abetted one another's breach of fiduciary duties, and Count III alleges that the defendants breached their employment agreements. The defendants have moved to dismiss the three counts of the complaint. According to the defendants, the complaint as a whole fails because the Trustee lacks standing to bring such actions. Alternatively, the defendants argue that Count I fails, at least in part, because the directors of a wholly-owned subsidiary owe no duty to the subsidiary corporation, and that Count II fails because the complaint does not allege the necessary elements of an aiding and abetting claim. These arguments are not persuasive.

*Count I*

Count I of the complaint alleges a typical breach of fiduciary duty claim against the directors and officers of a wholly-owned subsidiary. The Trustee argues that he may bring this action on behalf of at least three different potential plaintiffs: 1) Scott Acquisition Corp., the parent corporation, 2) Scotty's, the wholly-owned subsidiary, or 3) the creditor's of Scotty's. The defendants argue that this Court should dismiss Count I, to the extent it is brought on behalf of the subsidiary corporation, because the directors and officers do not owe a duty to any entity other than the parent corporation.

The defendants concede that the Trustee may sue in the name of the parent corporation but nevertheless refuse to acknowledge that the Trustee may, alternatively, sue in the name of Scotty's. Also, the defendants appear to acknowledge that the directors owe a fiduciary duty to Scotty's creditors but nevertheless argue that the Trustee does not have standing to bring such a claim. As a result, the issue presented by the defendants' motion to dismiss Count I is only whether the directors and officers of a wholly-owned insolvent subsidiary owe a fiduciary duty to that subsidiary.

■ The defendants argue that the directors do not owe any duties to the subsidiary itself. In support of this, the defendants rely principally on *Southwest Holdings, L.L.C. v. Kohlberg & Co. (In re Southwest Supermarkets, L.L.C.)*, 315 B.R. 565 (Bankr.D.Ariz.2004), in which the court interpreted Delaware corporate law to the effect that "Delaware law appears to hold that when a subsidiary is wholly owned, its officers and directors owe their fiduciary duties solely to the single shareholder, and not to the subsidiary corporation itself" and that "there is nothing to suggest this law changes when the corporation becomes insolvent." *Id.* at 575–76. I respectfully do not agree with that interpretation, however. In my view, Delaware law would recognize that the directors and officers of an insolvent wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors. This view is supported by a number of courts that have addressed the issue.

The *Southwest* court relied on the Delaware Supreme Court's decision in *Anadarko Petroleum Corp. v. Panhandle Eastern*

*Corp.,* 545 A.2d 1171 (Del.1988) for the proposition that the directors of a wholly-owned insolvent subsidiary owe fiduciary duties to the parent but not the subsidiary corporation. I do not believe that *Anadarko* advances this position.

Rather, the issue in *Anadarko* involved "whether a corporate parent and directors of a wholly-owned subsidiary owe fiduciary duties to the prospective stockholders of the subsidiary after the parent declares its intention to spin-off the subsidiary." *Anadarko,* 545 A.2d at 1172. The Delaware Supreme Court concluded "that prior to the date of distribution the interests held by Anadarko's prospective stockholders were insufficient to impose fiduciary obligations on the parent and the subsidiary's directors." *Id.* Thus, *Anadarko* did not address the situation addressed here.

Nor did *Anadarko* radically alter a director's fiduciary obligations to the corporation as the defendants suggest. *Id.* at 1178 (describing the holding as "narrow"). In fact, the majority of courts following *Anadarko* have explicitly rejected the defendants' interpretation as "overly broad." *See, e.g., First Am. Corp. v. Sheikh Al-Nahyan,* 17 F. Supp 2d 10, 26 (D.D.C. 1998) ("the proposition that a wholly-owned subsidiary's director's fiduciary duties flow only to the parent corporation ... overstates the 'narrow confines' of the [*Anadarko* ] court's holding."); *In re Mirant Corp.,* 326 B.R. 646, 651 (Bankr. N.D.Tex.2005) (rejecting an analogously "overly-broad reading of *Anadarko* ").

The bankruptcy court for the Southern District of New York, for example, articulated its reason for rejecting the precise argument that the defendants advance here:

Defendants argue that they owed no duty to RSL USA because RSL USA was part of a larger corporate group and a subsidiary of another corporation.

They advance this proposition by quoting out of context statements in several decisions where the actions of a parent corporation were challenged by the new shareholders of the subsidiary after the subsidiary had been spun off. *See Anadarko Petroleum Corp. v. Panhandle Eastern Corp.,* 545 A.2d 1171, 1174 (Del. 1998[1988]), where the court stated, "in a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders"; *see also Aviall v. Ryder System,* 913 F.Supp. 826, 832 (S.D.N.Y.1996), *aff'd on other grounds,* 110 F.3d 892 (2d Cir. 1997). In those cases, however, the holding merely reflected the principle that directors of a solvent corporation are obligated to manage it in the interest of the shareholders—in those cases, the parent corporation. None of the cases involved the duty that directors owe to the corporation and its entire community of interests when the corporation is in the vicinity of insolvency.

It would be absurd to hold that the doctrine that directors owe special duties after insolvency is inapplicable when the insolvent company is a subsidiary of another corporation. That is precisely when a director must be most acutely sensitive to the needs of a corporation's separate community of interests, including both the parent shareholder and the corporation's creditors. The Delaware courts have recognized that directors who hold dual directorships in the parent-subsidiary context may owe fiduciary duties to each corporation. *Weinberger v. UOP,* 457 A.2d 701, 710 (Del.1983); *In re Digex Inc. Shareholders Litig.,* 789 A.2d 1176, 1205–06 (Del. Ch.2000), citing *Warshaw v. Calhoun,* 43 Del.Ch. 148, 221 A.2d 487, 492 (1966);

[*44] *see Shaev v. Wyly*, 1998 Del. Ch. LEXIS 2, 1998 WL 13858 (Del. Ch.1998), aff'd, 719 A.2d 490 (Del.1998). There is no basis for the principle propounded by a few of the Defendants that the directors of an insolvent subsidiary can, with impunity, permit it to be plundered for the benefit of its parent corporation.

*RSL COM PRIMECALL, Inc. v. Beckoff (In re RSL COM PRIMECALL, Inc.)*, 01–11457, 2003 WL 22989669, at *12–13, 2003 Bankr.LEXIS 1635, at *42–44 (Bankr. S.D.N.Y. Dec. 11, 2003).[1] The *Southwest* court addressed *RSL* but distinguished it based on a creditor claim/debtor claim framework:

> *RSL's* discussion of *Anadarko* appears only in the context of creditor claims, not debtor claims. . . . [W]hile those creditors might therefore be able to assert breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims, here such creditor claims are barred by the statute of limitations. *RSL* suggests that while the beneficiary of officers' and directors' fiduciary duties shifts from the corporation to creditors upon insolvency, it does not suggest that greater fiduciary duties become owed to the corporation itself, nor that any such duties would be owed

upon insolvency even though not owed while solvent, as in the case of a Delaware wholly owned subsidiary. . . .

*Southwest*, 315 B.R. at 575–76.[2]

Thus, if the Trustee cast the cause of action as a "creditor claim," then even the *Southwest* decision would not support the defendants' argument. Nevertheless, the Court is hesitant to resolve the issue by resort to the *Southwest* court's creditor claim/debtor claim framework because such framework is not without its problems.

■ According to *Southwest*, the directors of a wholly-owned insolvent subsidiary do not owe any fiduciary duties to the subsidiary corporation but nevertheless owe fiduciary duties to the subsidiary's creditors. *Southwest*, 315 B.R. at 575–76. This result is awkward. Under Delaware law, creditors of an insolvent corporation are owed fiduciary duties. *Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787 (Del.Ch.1992). These duties, however, are typically derivative of the duties owed to the subsidiary corporation itself. *See Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 791–92 (Del.Ch. 2004); *see also* Donald J. Wolfe, Jr. & Michael A. Pittenger, Corporate And Commercial Practice In The Delaware Court Of Chancery § 9–2[a]

---

1. The *RSL* case is sufficiently convincing that the plaintiff has chosen to incorporate into its opposition memorandum several extensive paragraphs from the decision either verbatim or with only minor alterations. The plaintiff does not, however, place quotation marks around this material, block quote the subject text, or otherwise indicate that the text is not the plaintiff's own. *Compare* (Adv.Doc. # 15, pp.4–8) *with RSL*, 2003 WL 22989669, at *4, *7–8, *12–13, 2003 Bankr.LEXIS 1635, at *13–14, 24–26, 42–44. Indeed, the plaintiff does not even cite *RSL* in any of its papers.

2. The defendants also cite to *Roselink Investors, L.L.C. v. Shenkman*, 386 F.Supp.2d 209 (S.D.N.Y.2004). *Roselink* does not support

the defendants' position. *Id.* at 215. To the contrary, there, the court noted that "directors of a wholly-owned subsidiary, who otherwise would owe fiduciary duties only to the parent, also owe fiduciary duties to creditors of the subsidiary when the subsidiary enters 'the zone of insolvency.'" *Id.* The reasoning for this is that "where a corporation is operating in the vicinity of insolvency, a board of directors is not merely the agent of the residue risk bearers, but owes its duty to the corporate enterprise." *Id.* (quoting *Credit Lyonnais Bank Nederland, N.V. v. Pathe Communs. Corp.*, 12150, 1991 Del. Ch. LEXIS 215, at *108 (Del. Ch. Dec. 30, 1991)).

(2005)("[C]laims brought by creditors of an insolvent corporation for breach of duty on the part of directors for harming the economic value of the firm have ... been characterized as derivative ...."). Thus, if the subsidiary's creditors are said to be owed a fiduciary duty upon insolvency, the subsidiary itself must also be owed such a duty. *Prod. Res.*, 863 A.2d at 791–92.

*Southwest*, however, seemingly does not recognize that a director's fiduciary duty to creditors is derivative of the duty owed to the corporation. *Southwest*, 315 B.R. at 575–576. This is understandable as that decision did not have the benefit of *Production Resources*. In *Production Resources*, the Delaware Court of Chancery clarified directors' fiduciary obligations in the zone of insolvency:

> When a firm has reached the point of insolvency, it is settled that under Delaware law, the firm's directors are said to owe fiduciary duties to the company's creditors. This is an uncontroversial proposition and does not completely turn on its head the equitable obligations of the directors to the firm itself. The directors continue to have the task of attempting to maximize the economic value of the firm. That much of their job does not change.
>
> \*  \*  \*  \*  \*  \*
>
> [T]he transformation of a creditor into a residual owner does not change the nature of the harm in a typical claim for breach of fiduciary duty by corporate directors. Two examples will illustrate this. Assume that a corporation, say an airline, is already insolvent but that it has ongoing operations. A well-pled claim is made by one of the company's many creditors that the directors have engaged in self-dealing. Is this claim a direct claim belonging to the corporation's creditors as a class, or the specific complaining creditor, such that any mon-

> etary recovery would go directly to them, or it? I would think that it is not. Instead, because of the firm's insolvency, creditors would have standing to assert that the self-dealing directors had breached their fiduciary duties by improperly harming the economic value of the firm, to the detriment of the creditors who had legitimate claims on its assets. No particular creditor would have the right to the recovery; rather, all creditors would benefit when the firm was made whole and the firm's value was increased, enabling it to satisfy more creditor claims in order of their legal claim on the firm's assets. In other words, even in the case of an insolvent firm, poor decisions by directors that lead to a loss of corporate assets and are alleged to be a breaches of equitable fiduciary duties remain harms to the corporate entity itself. Thus, regardless of whether they are brought by creditors when a company is insolvent, these claims remain derivative, with either shareholders or creditors suing to recover for a harm done to the corporation as an economic entity and any recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly to the extent of their claim on the firm's assets. The reason for this bears repeating—the fact of insolvency does not change the primary object of the director's duties, which is the firm itself. The firm's insolvency simply makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value and logically gives them standing to pursue these claims to rectify that injury. Put simply, when a director of an insolvent corporation, through a breach of fiduciary duty, injures the firm itself, the claim against the director is still one belonging to the corporation.

*Prod. Res.,* 863 A.2d at 790–92 (footnotes omitted); *see Credit Lyonnais Bank Nederland,* 1991 Del. Ch. LEXIS 215, at *108 ("At least where a corporation is operating in the vicinity of insolvency, a board of directors is not merely the agent of the residue risk bearers, but owes its duty to the corporate enterprise.").

Thus, the Court rejects the suggestion that upon insolvency a director of a wholly-owned subsidiary owes a duty to that corporation's creditors but not to the corporation itself. A more natural reading of Delaware law is that upon insolvency directors of a wholly-owned subsidiary owe fiduciary duties to the subsidiary and its creditors.

*Count II*

■ Count II of the complaint alleges that the defendants aided and abetted one another's breaches of fiduciary duty to Scotty's. The defendants argue that a number of places in the complaint suggest that certain of the named defendants had no knowledge of and there is no evidence of any participation in the improper conduct of others. The complaint, however, alleges that "the Defendants had knowledge of the facts and circumstances alleged in paragraphs 1 through 75 above . . . ." (Adv.Doc. # 1, ¶ 77) The term Defendants, as defined in the complaint, includes Morris, Bost, Pacos, Dulfer, James, Patten, Bowne, and Kelly. At this stage, the allegations of the complaint must be accepted as true and read in the light most favorable to the non-moving party. As such, the plaintiff has stated a claim upon which relief can be granted.

Also, with respect to Counts I and II, the defendants argue (for the first time in their reply brief) that the complaint has not alleged insolvency (Adv.Doc. # 18, p.2). I disagree. The complaint repeatedly alleges that the corporation was insolvent and that, as a result, the defendants owed fiduciary duties to Scotty's and its creditors (*see, e.g.,* Adv. Doc. # 1, ¶¶ 60, 62, 67, 69(f), 72, 75). Again, at this stage of the proceeding, the inquiry is not whether the plaintiff will ultimately prevail but only whether the plaintiff is entitled to offer evidence of its claims. *Maio,* 221 F.3d at 482.

*Chapter 7 Trustee's Standing*

■ The defendants' final argument is that the Chapter 7 trustee lacks standing to bring a breach of fiduciary duty claim on behalf of the subsidiary's creditors. This argument is without merit.

■ As made clear from the discussion of the *Anadarko* decision, the claims alleged in this case on behalf of the creditors are derivative of the corporation itself. *See Prod. Res.,* 863 A.2d at 791–92. The complaint explicitly states that "[a]s a direct and proximate result of the breaches of fiduciary duty of the Defendants, the enterprise value of Scotty's was substantially diminished and the creditors were damaged thereby (Adv.Doc. # 1, ¶ 75)." Certainly, the Trustee has standing to recover for such injuries: "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim . . . ." *Bd. of Trs. v. Foodtown, Inc.,* 296 F.3d 164, 170 (3d Cir.2002) (quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2d Cir.1989)).

None of the cases that the defendants cite say anything to the contrary. All of those cases make clear that "a bankruptcy trustee may assert only the claims that belong to the bankruptcy estate, those claims may include the interests of creditors in the sense that the trustee has the duty to marshal the assets of the estate so that they can be distributed to creditors on a *pro rata* basis." *Bondi v. Grant Thorn-*

*ton Int'l (In re Parmalat Sec. Litig.),* 377 F.Supp.2d 390, 420 (S.D.N.Y.2005).

■ True, a trustee "does not have standing to pursue the individual claims of creditors or even of creditors as a class ...." *Id.* Nevertheless, the trustee may "pursue[] the interests of the bankruptcy estate and derivatively the interests of its creditors ...." *Id.* In this case, the plaintiff is not seeking recovery on behalf of an individual or even a class of creditors; rather, the plaintiff seeks recovery for the bankrupt corporation itself. Accordingly, the defendants' argument that the Trustee lacks standing is rejected.

## CONCLUSION

For the foregoing reasons, the Court will deny the defendants' motion to dismiss for failure to state causes of action and for lack of standing.